IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AMBER COLLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-cv-0534-MJR-PMF |
| | ) | |
| DG RETAIL LLC, | ) | |
| doing business as Dollar General, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

### A.     Introduction and Procedural Overview

In June 2013, Amber Collman filed an employment discrimination suit in this Court, naming two Defendants – Dollar General Corporation and DG Retail, LLC. A June 27, 2013 Order dismissed Dollar General Corporation, leaving DG Retail, LLC (DGR) as the sole Defendant. Collman's four-count complaint contained claims of sexual harassment and retaliation (based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, and the Illinois Human Rights Act, 775 ILCS 5/1-109, *et seq.*), intentional infliction of emotional distress, and negligent retention.

DGR secured additional time in which to respond to the complaint. On July 15, 2013, DGR moved to dismiss parts of the complaint for lack of subject matter jurisdiction (for failure to exhaust administrative remedies before filing suit), moved to dismiss other parts of the complaint for failure to state a claim upon which relief can be

granted, and asked in a footnote (Doc. 18, p.1, n.2) that the Court extend DGR's deadline to answer the remainder of the complaint.

Ultimately, Collman voluntarily dismissed, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), the claims which DGR challenged on jurisdictional grounds – her claims for sexual harassment and retaliation under the Illinois Human Rights Act (which were part of Counts I and II) – plus her negligent retention claim (Count IV). What remains of Collman's complaint are her claims for sexual harassment under Title VII (contained in Count I), retaliation under Title VII (contained in Count II), and intentional infliction of emotional distress (Count III). Collman filed a merits-based response to the requested dismissal of Count III (Doc. 24), and DGR replied thereto on September 3, 2013 (Doc. 27). For the reasons stated below, the Court grants the motion to dismiss Count III for failure to state a claim upon which relief can be granted.

B. <u>**Applicable Legal Standards**</u>

Federal Rule of Civil Procedure 12(b)6) governs motions to dismiss for failure to state a claim. In 2007 and 2009, respectively, the United States Supreme Court handed down two decisions which delineated the district court's proper role on a Rule 12(b)(6) motion -- ***Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007),** and ***Ashcroft v. Iqbal*, 556 U.S. 662, 663-664 (2009).** In deciding a 12(b)(6) motion, the court's task is to determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." ***Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008),** *quoting Twombly*, **550 U.S. at 570.** *Accord **Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir.**

2013) ("To survive a motion to dismiss, the complaint must contain enough facts to state a claim for relief that is plausible on its face.").

A complaint need not contain detailed factual allegations to meet this standard, *Scott v. Chuhak & Tecson, P.C.*, -- F.3d --, 2013 WL 3970050, *8 (7th Cir. Aug. 5, 2013), but it must "go beyond mere labels and conclusions" and contain "enough to raise a right to relief above the speculative level." *G&S Holdings, LLC v. Continental Casualty Co.*, 697 F.3d 534, 537-38 (7th Cir. 2012). Courts "must still approach motions under Rule 12(b)(6) by 'construing the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.'" *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010), *quoting Tamayo v. Blagoyevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

The United States Court of Appeals for the Seventh Circuit has explained that *Iqbal* clarified the two working principles underlying *Twombly*:

> First, although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion. *Id.* Accordingly, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, the plausibility standard calls for a "context-specific" inquiry that requires the court "to draw on its judicial experience and common sense." *Id.* at 679.

*McReynolds v. Merrill Lynch & Co., Inc.*, 695 F.3d 873, 885 (7th Cir. 2012).

Stated another way: "To withstand a Rule 12(b)(6) challenge after *Iqbal* and *Twombly*, 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is '*could* these things have happened, not *did* they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633

**F.3d 529, 533 (7th Cir. 2011),** *citing Swanson v. Citibank, N.A.,* **614 F.3d 400, 404-05 (7th Cir. 2010)(emphasis in original).**

So this Court reviews Collman's complaint, taking as true all well-pled factual allegations. After excising any allegations not accepted as true (legal conclusions), the Court must decide whether the remaining factual allegations plausibly suggest that Collman is entitled to relief. *McCauley v. City of Chicago,* **671 F.3d 611, 616 (7th Cir. 2011).** Of course, a Rule 12(b)(6) dismissal motion "must be decided solely on the face of the complaint and any attachments that accompanied its filing." *Miller v. Herman,* **600 F.3d 726, 733 (7th Cir. 2010),** *citing* F ED. R. C IV. P. 10(c) **and** *Segal v. Geisha NYC LLC,* **517 F.3d 501, 504-05 (7th Cir. 2008).** If, on a Rule 12(b)(6) motion, matters outside the pleadings are presented to, and not excluded by, the court, the motion must be treated as a Rule 56 motion for summary judgment. *General Insurance Co. of America v. Clark Mall Corp.,* **644 F.3d 375, 378 (7th Cir. 2011);** F ED. R. C IV. P. 12(d).

C. <u>Analysis</u>

DGR moves to dismiss Count III, Collman's claim for intentional infliction of emotional distress (IIED) on three grounds. First, DGR argues that Collman's IIED claim is preempted by the Illinois Human Rights Act (IHRA), **775 ILCS 5/1-101,** *et seq.* Second, DGR argues that Collman's IIED claim is barred by the Illinois Workers' Compensation Act (IWCA), **820 ILCS 305/1,** *et seq.* Finally, DGR argues that, if not preempted or barred, Collman's IIED claim must be dismissed, because she fails to plead the requisite elements of an IIED cause of action, and DGR cannot be held vicariously liable for the intentional torts of its employees. The Court addresses these

4

three arguments in reverse order. A summary of key facts, as alleged in the complaint, aids analysis.

→ **SUMMARY OF KEY FACTS AND ALLEGATIONS**

The complaint alleges as follows. DGR owned, operated, managed, and/or controlled a Dollar General store on Berkshire Boulevard in East Alton, Illinois (within this Judicial District). In February 2012, DGR hired Plaintiff Collman to work as a lead sales associate at the East Alton store. Brian Garner was Collman's immediate supervisor and had managerial authority over Collman. Beginning in June 2012, DGR (through Garner) subjected Collman to sexual harassment and subjected Collman to a hostile work environment. Garner inappropriately touched Collman, made inappropriate sexual references in conversations with Collman, and solicited Collman to come to his home. Garner's conduct was unwelcome, sexual in nature, directed at Collman because of her sex (female), severe, pervasive, and intentional. DGR knew of Garner's unlawful actions and practices. Garner "acted as [DGR's] alter ego (Doc. 2, p. 6). DGR did not promptly correct the behavior or practices, thereby ratifying, approving, and perpetuating the unlawful conduct. When Collman complained about Garner's conduct, DGR retaliated against Collman – altering the conditions of her job and ultimately terminating her employment.

In addition to the above-summarized "General Allegations," the individual counts contain other specific allegations. For instance, Count II (the retaliation claim) details that: Collman initially reported the harassment to DGR's senior management,

including District Manager Foster Bliss; Bliss installed a surveillance camera which confirmed Garner's inappropriate physical contact with a female co-worker's buttocks; DGR refused Collman's request to be reassigned so she did not have to work with Garner; Bliss directed Collman to "keep her mouth shut;" Collman then reported the matters to DGR's hotline; DGR District Manager Art Biggs responded to the hotline call and instructed Collman to submit a written statement to Bliss, even though Bliss was a subject of her complaints on the hotline; Collman submitted her written statement to Bliss on December 17, 2012; and Collman was fired by Bliss the next day.

**Count III (the IIED claim)** incorporates by reference the general allegations, repeats much of the chronology regarding her failed attempt to report Garner (and then Bliss) to DGR, and specifically alleges that Garner subjected Collman to inappropriate sexual touching, made lewd and sexual comments, referred to women in sexually derogatory and sexually demeaning names, made false statements against Collman, and engaged in "other acts of sexual harassment, discrimination and sexually hostile work environment" (Doc. 2, p. 11). Count III adds: (a) by engaging in the foregoing conduct, DGR repeatedly, intentional inflicted emotional distress on Collman; (b) DGR intended to cause Collman severe emotional distress or acted in reckless disregard that these actions would cause severe emotional distress to Collman; and (c) as a direct result of DGR's conduct, Collman was demeaned, degraded, humiliated and embarrassed and suffered severe mental anguish plus emotional and physical distress (Doc. 2, p. 13).

→   **THE ELEMENTS OF AN ILLINOIS IIED CLAIM**

Construing the well-pled facts and reasonable inferences in Collman's favor, the Court assesses whether Count III states a claim on which relief can be granted. Illinois has recognized the tort of IIED since 1961, when the Illinois Supreme Court held that persons could be liable for truly outrageous actions, *i.e.*, "an unwanted intrusion … calculated to cause severe emotional distress to a person of ordinary sensibilities." *Honaker v. Smith,* **256 F.3d 477, 490 (7th Cir. 2001),** *quoting Knierim v. Izzo,* **174 N.E.2d 157, 164 (Ill. 1961).** To properly plead a claim for IIED under Illinois law, a plaintiff must allege: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Schroeder v. RGIS, Inc.,* **-- N.E.2d --, 2013 WL 2608754, \*7 (Ill. App. June 11, 2013),** *quoting Kolegas v. Heftel Broadcasting Corp.,* **607 N.E.2d 201, 211 (Ill. 1992).**

The Illinois Supreme Court has warned that insults, indignities, threats, annoyances and petty oppressions do not constitute extreme and outrageous conduct. *Schroeder* **at \*7.** Instead, the nature of the defendant's conduct "must be so extreme as to go beyond all possible bounds of decency" *and* "be regarded as intolerable in a civilized community." *Kolegas,* **607 N.E.2d at 211.** *Accord Muzikowski v. Paramount Pictures Corp.,* **477 F.3d 899, 908 (7th Cir. 2007) (Illinois IIED claim requires "truly extreme and outrageous" conduct).** "[E]motional distress alone is not sufficient to give rise to a cause of action;" the emotional distress must be severe, that is, unendurable by a reasonable person. *Sornberger v. City of Knoxville, Ill.,* **434 F.3d 1006, 1030 (7th Cir.**

**2006),** *citing Pub. Fin. Corp. v. Davis,* **360 N.E.2d 765, 767-78 (Ill. 1976), and** *Kleidon v. Rizza Chevrolet, Inc.,* **527 N.E.2d 374, 377 (Ill. App. 1988).** To be actionable, the defendant's conduct must be such that the "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: 'Outrageous!'" *Honaker v. Smith,* **256 F.3d 477, 489 (7th Cir. 2001),** *quoting Restatement (Second) of Torts* **§ 46 cmt. d (1965).**

The case at bar presents a close call as to whether Count III states a claim for IIED on which relief can be granted. Collman alleges that she was subjected to unwelcome touching, inappropriate references, lewd comments, demeaning names, and derogatory remarks by Garner; she was told to keep her mouth shut once; "false statements" were made about her; and she was ultimately fired. We do not know the substance or specifics of the remarks, comments, and references, or the nature of the false statements made about Collman. Such details are not required in a system of notice pleading, of course, but it is difficult to objectively judge how outrageous or extreme these remarks or statements are without more information than Count III provides.

Collman suggests the case at bar is analogous to *Redman v. Gas City, Ltd.,* **2007 WL 869561 (N.D. Ill. 2007)(unreported)**, in which the District Court denied the employer/defendant's motion to dismiss an Illinois IIED claim. In *Redman,* the complaint alleged that the plaintiff's manager had called plaintiff a bitch and an old lady. The complaint also alleged that the plaintiff had suffered nearly two years of shocking, lewd, sexually-charged comments. The latter included telling plaintiff how

he (the manager) had performed oral sex on a man in front of a female friend (to satisfy the friend's sexual fantasy), telling plaintiff that he wanted to "suck that customer's dick," encouraging the plaintiff to look at the customers' "tight asses," and asking (in reference to heterosexual sex) "why would anyone want to have sex with something that bleeds every month but never dies." *Id.*, **2007 WL 869561, \*1.**

These allegations stand in contrast to Collman's generic allegations of "inappropriate references" and "false statements." Still, we are at the pleading (not the proving) stage. To withstand a Rule 12(b)(6) challenge, the complaint need only furnish "enough details about the subject-matter of the case to present a story that holds together," and the question the court should ask is "*could* these things have happened, not *did* they happen." **Estate of Davis, 633 F.3d at 533.** The comments and actions alleged by Collman are more than mere annoyances or trivialities, but the Court is hard-pressed to find that the behavior alleged stretches beyond all bounds of decency and is considered unendurable in a civilized community. However, the Court need not decide the point, because Count III merits dismissal on another basis.

→     **THE IWCA'S EXCLUSIVITY PROVISION**

Assuming that Collman's allegations *do* state a claim for IIED on which relief can be granted, Count III fails to clear another hurdle – the exclusivity provision of the Illinois Workers' Compensation Act (IWCA). Under the IWCA, employers compensate their employees for job-related injuries and illnesses, regardless of fault. "In return for not having to prove fault, employees receive only workers' compensation benefits from

their employers and cannot sue their employers to receive more damages." *Baltzell v. R&R Trucking Co.*, **554 F.3d 1124, 1127 (7th Cir. 2009),** *citing* **820 ILCS 305/5(a).** The Illinois Supreme Court explained in the seminal case, *Meerbrey v. Marshall Field and Co., Inc.*, **564 N.E.2d 1222, 1225 (Ill. 1990):**

> The Workers' Compensation Act is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment…. Accordingly, the Act imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer. The exclusive remedy provision "is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts…."

Section 5(a) of the IWCA declares that only the compensation provided therein (and no common law right to recover damages from the employer) shall be available to a covered employee. **820 ILCS 305/5(a).**[1] The IWCA furnishes the exclusive remedy; an employee has no right to recover other damages from his employer *or its agents or employees* for accidental injuries incurred in the course of employment. *Hunt-Golliday v. Metro. Water Recl. Dist. of Greater Chicago,* **104 F.3d 1004, 1016 (7th Cir. 1997).**

Thus, the IWCA bars an employee from bringing a common law cause of action against her employer, unless the employee-plaintiff proves:

(1) that the injury was not accidental;
(2) that the injury did not arise from her employment;
(3) that the injury was not received during the course of employment;
or (4) that the injury is not compensable under the IWCA.

---

[1] Additionally, Section 11 provides that the compensation provided under "this Act, shall be the measure of the responsibility of any employer … for accidental injuries sustained by any employee arising out of and in the course of the employment…." **820 ILCS 305/11.**

*Meerbrey*, **564 N.E.2d at 1226.** *See also TKK USA, Inc. v. Safety Nat. Cas. Corp.*, **-- F.3d --, 2013 WL 4457317, *2 (7th Cir. August 21, 2013) (Reiterating, in context of the IWCA and the homologous Occupational Diseases Act: "The bar to common law claims does not apply if the [injury or disease] was not caused accidentally, did not arise out of employment, was not incurred during the course of employment, or is not compensable under [the Act].");** *Dunlap v. Nestle,* **431 F.3d 1015, 1016 (7th Cir. 2005).**

Here, Collman endeavors to avoid application of the IWCA's exclusivity provision by arguing that her injury (which plainly arose from and during the course of her employment) was not accidental.  As to whether an injury is *accidental* (for purposes of applying the IWCA exclusivity provision), the Illinois Supreme Court has held that accidental is not a technical or legal term.  Instead, "accidental" encompasses "anything that happens without design, or an event which is unforeseen by the person to whom it happens."  *Meerbrey,* **564 N.E.2d at 1226.**

More specifically, "injuries inflicted intentionally upon an employee by a co-employee are 'accidental' within the meaning of the Act, since such injuries are unexpected and unforeseeable form the injured employee's point of view" and "also accidental from the employer's point of view, at least where the employer did not direct or expressly authorize the co-employee to commit the assault."  *Id.,* **564 N.E.2d at 1226.** As to the latter, an allegation that an employee was acting within the scope of his employment does not suffice as an allegation that the specific acts in question were *expressly authorized* by the employer.  *Id.  See also Glasgow v. Associated Banc-Corp,* **980 N.E.2d 785, 790-91 (Ill. App. 2012) (to avoid the IWCA's bar by on the grounds**

**that an injury was *not accidental,* a plaintiff must show that her employer specifically intended the actions in question to injure her);** *Hunt-Golliday*, **104 F.3d at 1016-17 (the fact that a supervisor was acting within the scope of his authority does not equal authorization by the employer for the commission of an intentional tort).**

The Illinois Supreme Court in *Meerbrey* added that the IWCA's exclusivity provision does not bar a common law cause of action against an employer for injuries which the employer or its alter ego intentionally inflicted on an employee or injuries which were commanded or expressly authorized by the employer. *Id.,* **564 N.E.2d at 1226.** The rationale underlying this rule is that the employer ought not be permitted to intentionally commit an act and then hide behind the IWCA's exclusivity provision. *Id.*

Collman has not alleged that DGR expressly authorized, or commanded, or directed the acts in question. The allegations that DGR should have known of the Garner's acts, or that DGR learned of the acts and failed to appropriately respond, do not equate to expressly authorizing or commanding the acts. The allegation that Garner was Collman's supervisor and acted within the scope of his managerial authority over her does not equate to DGR expressly authorizing the acts either. *Hunt-Golliday*, **104 F.3d at 1017.** Of course, if an employee acts as the alter ego of the employer in committing an intentional tort, that furnishes a basis for holding the employer liable. In other words, the exclusivity provision of the IWCA does not bar a common-law cause of action against an employer if the employer or its alter ego intentionally inflicted an injury upon an employee.

Collman's complaint contains a single reference to the phrase "alter ego." Paragraph 24 alleges that Defendants were responsible for the unlawful conduct of Brian Garner, because Garner was a member of senior management at the East Alton store "and, as such, acted as the Defendants' alter ego." Just being a manager or supervisor does not render an employee his employer's alter ego. Setting aside legal conclusions contained in the complaint and focusing on the well-pled facts and reasonable inferences (drawn in Collman's favor), the Court finds that the allegations do not support the conclusion that Garner (or Bliss) was the alter ego of DGR, such that Collman can avoid application of the IWCA's exclusivity provision and directly sue DGR for the intentional infliction of emotional distress claimed in Count III.

The Illinois Supreme Court has held that the only way an injured employee can sue her employer for damages, other than by filing for compensation under the IWCA, is to allege one of the following: (1) the injury was not accidental, (2) the injury did not arise from her employment, (3) the injury was not received during the course of her employment, or (4) the injury is not compensable under the IWCA. *Toothman v. Hardee's Food Systems, Inc.*, **710 N.E.2d 880, 883 (Ill. App. 1999).** Collman asserts that her injury was not accidental, but her complaint does not contain allegations allowing that conclusion to be plausibly drawn. Injuries intentionally inflicted upon an employee by a coworker are accidental within the meaning of the IWCA "since such injuries are unexpected … from the employee's point of view." Collman has not alleged that DGR expressly authorized, commanded, or directed the injuries she sustained.

And Collman's allegations, construed in her favor, do not support the conclusion that Garner acted as DGR's alter ego. Accordingly, Count III is barred by the IWCA.

→ **IHRA PREEMPTION OF STATE-LAW TORT CLAIMS**

DGR also argues that Count III of Collman's complaint is preempted by the IHRA. Enacted in 1979, the IHRA was intended, *inter alia,* to secure for individuals in Illinois freedom from unlawful discrimination in connection with employment, real estate transactions, and availability of public accommodations. ***Blount v. Stroud*, 904 N.E.2d 1, 6 (Ill. 2009).** To accomplish this goal, the IHRA established a comprehensive system of administrative procedures to review and resolve complaints of civil rights violations. Moreover, the IHRA preempts all state law claims "seeking redress for a 'civil rights violation' within the meaning" of the IHRA. ***Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).**

Sexual harassment of an employee by an employer is one of the "civil rights violations" delineated in the IHRA. The IHRA defines sexual harassment as including "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when … such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." **775 ILCS 5/2-101(E)(West 2010).** Retaliation against a person who opposes unlawful discrimination is another civil rights violation under the Act. *See* **775 ILCS 5/6-101(A).**

Clearly, the IHRA does not preempt *all* common law tort claims relating to sexual harassment or retaliation.  ***Blount*, 904 N.E.2d at 8-9, *citing Geise v. Phoenix Co. of Chicago, Inc.*, 639 N.E.2d 1273 (Ill. 1994), and *Maksimovic v. Tsogalis*, 687 N.E.2d 21 (Ill. 1997).**  Rather, if an employee's common law tort claim against her employer is inextricably linked with a civil rights violation under the IHRA (such as a claim for sexual harassment), the tort claim is preempted by the IHRA.  ***Blount*, 904 N.E.2d at 8.** *Accord Schroeder v. RGIS, Inc.,* **992 N.E.2d 509, 518 (Ill. App. June 11, 2013) (plaintiff's IIED claim was "inextricably linked to a civil rights violation," retaliation he suffered after reporting his supervisor's discriminatory conduct toward him, and thus was preempted by the IHRA);** *Harrison v. Addington,* **955 N.E.2d 700, 708 (Ill App. 2011) (The IHRA "preempts tort claims only when they are 'inextricably linked' to a civil rights violation…. No preemption exists if there is an independent basis for the action apart from the Human Rights Act.").**

Stated another way, an employee's common law tort claim is *not* preempted by the IHRA if the plaintiff has an independent basis for imposing liability on the employer (*e.g.,* absent the allegations of sexual harassment).  *Id., citing Geise,* 639 N.E.2d at 1277. *Accord Nelson v. Realty Consulting Services, Inc.,* **2011 WL 2989565 (7th Cir. 2011)(in unreported decision, Seventh Circuit reiterated that IHRA preempts state law claims where the basis for the claim arises from a matter covered under the Act, unless the plaintiff can establish a basis for imposing liability on defendants independent of the Act).**

So, for instance, state law tort claims for assault, battery, and false imprisonment were held to be independent of a sexual harassment claim and not preempted by the IHRA in *Maksimovic. See Krocka,* **203 F.3d at 517,** *citing Maksimovic,* **687 N.E.2d at 23.** Similarly, the plaintiff's tortious interference claims were held to be cognizable without reference to the legal duties created by the IHRA and, thus, not preempted by the IHRA, in *Harrison,* **955 N.E.2d at 708.**

An instructive opinion to the case sub judice is *Naeem v. McKesson Drug Co.,* **444 F.3d 593 (7th Cir. 2006).** In *Naeem,* the Court of Appeals affirmed the District Court's finding that an IIED claim was not preempted. After collecting and discussing district court cases within the Seventh Circuit which had reached conflicting conclusions as to preemption of IIED claims, the Court clarified that "the proper inquiry was not whether the facts that support [plaintiff's] intentional infliction of emotional distress claim could also have supported a discrimination claim, but instead whether [plaintiff] can prove the elements of intentional infliction of emotional distress independent of legal duties furnished by the IHRA." *Naeem,* **444 F.3d at 604.**

As outlined above, an Illinois plaintiff can recover damages for IIED if she establishes (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was a high probability his conduct would do so, and (3) the defendant's conduct did cause severe emotional distress. The *Naeem* plaintiff had alleged (and presented the jury proof of) a pattern of extreme behavior by the defendants which constituted a tort independent of the duty to

not discriminate against her. "The conduct that she alleges is not just sexually harassing conduct … but rather behavior that would be a tort no matter what the motives of the defendant. Therefore, her claim was not preempted by the IHRA." *Naeem*, **444 F.3d at 605.** Thus, in analyzing IHRA preemption, the court should scrutinize the source of the legal duty (more than the factual basis) of the plaintiff's claim. *Id.* **at 603, n.4.**

In the instant case, counsel cite divergent cases supporting their opposite positions on IHRA preemption. As *Naeem* acknowledges, the reported opinions can be difficult to reconcile. The Seventh Circuit has held that "discrimination and intentional infliction of emotional distress are different wrongs," and torts that do not depend on a civil rights violation are not preempted. *Naeem,* **444 F.3d at 604,** *quoting Sanglap vs. LaSalle Bank FSB,* **345 F.3d 515, 519 (7th Cir. 2003).** Ultimately, the distinction between claims that are preempted and claims that are not preempted lies in *the legal duty that the employer allegedly breached* – i.e., whether the defendant's alleged tort is independent of any duty to not discriminate against the plaintiff. *Naeem,* **444 at 604-05.**

Most simply put, whether a state law tort claim is preempted by the IHRA depends on whether the IHRA furnishes the legal duty the defendant allegedly breached. *Bannon v. University of Chicago,* **503 F.3d 623, 630 (7th Cir. 2007).** Cognizant that we are at the 12(b)(6) pleading stage in the case at bar, the undersigned asks whether Collman has alleged the elements of an IIED claim, "independent of legal duties furnished by the IHRA." *Naeem,* **444 F.3d at 604.** Examining the complaint and focusing on the legal duties allegedly breached by DGR, the answer is no.

For her IIED claim, Collman has alleged sexually harassing conduct – actions which contravened DGR's duty, under the IHRA, to not sexually harass its employees. Count III does not allege that DGR committed any tort *independent* of this legal duty. Collman's IIED allegations plainly implicate DGR's duty under the IHRA to refrain from sexually harassing employees or creating a hostile work environment for employees. Collman's IIED claim is preempted by the IHRA.

D.  **Conclusion**

For all these reasons, the Court **GRANTS** DGR's motion (Doc. 18) to dismiss Count III – the IIED claim – for failure to state a claim upon which relief can be granted. Dismissal of this claim is with prejudice. Because the operative complaint before the Court contains a Defendant and several claims which have been dismissed, the Court **DIRECTS** Collman to file a First Amended Complaint which contains only the remaining claims and remaining Defendant. The counts shall be numbered with Arabic numbers (e.g., 1, 2, 3) rather than Roman numerals (e.g., IV, V, VI). **Collman must file her First Amended Complaint no later than October 1, 2013**. DGR shall respond to the amended complaint in the time allotted under Federal Rule of Civil Procedure 15(a)(3).

IT IS SO ORDERED.

DATED September 19, 2013.

                                              s/ *Michael J. Reagan*
                                              Michael J. Reagan
                                              United States District Judge